■ In the Matter of LAWRENCE ROSEN, D.D.S., P. C., Appellant. LILLIAN ROBERTS, as Commissioner of Labor, Respondent. —Decision affirmed, without costs. No opinion. Kane, J. P., Main, Yesawich, Jr., and Harvey, JJ., concur.

Mikoll, J., dissents and votes to reverse in a memorandum. Mikoll, J. (dissenting). I respectfully dissent. This record fails to support the finding that Lawrence Rosen, D.D.S., P. C., a public professional corporation, was the employer of various physicians and dentists who had entered into an agreement with it to provide medical and dental services at two suites provided by the corporation at 50 High Street in the City of Buffalo. The contract between the corporation and the physicians and dentists designated them as independent contractors. Of course, the language of the agreement between the parties cannot serve as the sole predicate for the employer-employee relationship. The nature of the relationship needs to be viewed in its entirety. It has been recognized that the services of professionals are not subject to the same level of control as are other categories of employees. However, a

standard of over-all control must be manifested before an employer-employee relationship will be found to exist *(Matter of Salamanca Nursing Home [Roberts],* 68 NY2d 901).

The only rational conclusion to be reached from this record is that over-all control was lacking by the corporation over the physicians and doctors and that they were in fact independent contractors rather than employees of the corporation.

The individual doctors and dentists were not supervised in any way; they determined when and if they would work; they determined their own patients and how much and in what manner to bill them, including gratis treatment; they had other business locations; some had their own clerical and technical staff to assist them at 50 High Street and kept their own fees. They alone made decisions as to the nature and mode of treatment.

Though patient records were kept at 50 High Street, when a doctor left, those he treated who chose to follow him had their records forwarded to him. As to Dr. David Casey, all his patients and their records went to him when he departed. Each doctor carried his own malpractice coverage. The corporation neither demanded nor knew the amount of the malpractice insurance carried. Each doctor also paid his own staff's unemployment insurance. Each doctor except Dr. Lawrence Golding received 50% of profits after costs of operation were deducted. Dr. Golding received more because he supplied his own equipment.

There were no rules regarding calling in when a doctor was unavailable due to indisposition or otherwise. The corporation provided most of the office equipment and also clerical staff to maintain records which could be used by the doctors. At the end of the month, the doctors' and dentists' work times were calculated and a deduction for the costs of the corporation's staff was made if they used them. The doctors were not at the call of the corporation to dispense services but decided when and if they would be available.

Accordingly, the decision of the Unemployment Insurance Appeal Board assessing the corporation for contributions on the basis of an employer-employee relationship with these professionals should be reversed.